## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 24 2016, 9:18 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT *PRO SE*

Vincent James
Michigan City, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Justin F. Roebel
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Vincent James, a/k/a, Victor James, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | May 24, 2016 <br><br> Court of Appeals Case No. 64A03-1512-CR-2356 <br><br> Appeal from the Porter Superior Court <br><br> The Honorable William E. Alexa, Judge <br><br> Trial Court Cause No. 64D02-9002-CF-30 |

**Bradford, Judge.**

# Case Summary

[1] Appellant-Defendant Vincent James, a/k/a, Victor James, was convicted of felony murder in connection to the death of Gayle Taylor and was initially sentenced to death. After the Indiana Supreme Court overturned James's initial sentence, he was sentenced to an aggregate term of ninety years. The ninety-year sentence was subsequently affirmed by the Indiana Supreme Court.

[2] On November 30, 2015, James filed a *pro-se* motion requesting the trial court to correct his allegedly erroneous sentence. This motion was denied by the trial court. James appealed, arguing that the trial court abused its discretion in denying his motion. For its part, Appellee-Plaintiff the State of Indiana (the "State") argues that the trial court acted within its discretion in denying James's motion. Because we agree with the State, we affirm.

## Facts and Procedural History

[3] The Indiana Supreme Court's opinion in James's first direct appeal instructs us to the facts relating to the underlying matter:

> On December 15, 1989, James entered an office of an insurance agency in Michigan City, Indiana, because he had heard that insurance companies keep large amounts of money on hand. During the course of the ensuing robbery, Gayle Taylor, who worked in the insurance agency office, was shot once in the head with James'[s] gun. At approximately 1:55 p.m., the police were alerted to the shooting by a telephone call from the victim. When police arrived, they found her on the floor in a small room in the rear of the insurance office, with blood spattered around the room. The outer office appeared intact. Witnesses identified James as being in the vicinity of the agency near the time of the

shooting. One of those witnesses worked in the office next door and reported hearing a single gunshot.

*James v. State* ("*James I*"), 613 N.E.2d 15, 20 (Ind. 1993). Following trial, the jury found James guilty of felony murder and determined that James was a habitual offender. *Id*. The trial court subsequently sentenced James to death. *Id*. On appeal, the Indiana Supreme Court overturned James's sentence and remanded for a new sentencing hearing. *Id*. at 21-22. The Supreme Court also found that the evidence was sufficient to sustain the jury's determination that James was a habitual offender. *Id*. at 26.

[4] On remand, the trial court sentenced James to a term of sixty years. *James v. Sate* ("*James II*"), 643 N.E.2d 321, 322 (Ind. 1994). The trial court enhanced James's sixty-year sentence by an additional thirty years by virtue of his status as a habitual offender, for an aggregate term of ninety years. *Id*. The Indiana Supreme Court subsequently affirmed this sentence in its entirety. *Id*.

[5] On November 30, 2015, James filed a *pro se* motion requesting the trial court to correct his allegedly erroneous sentence.[1] Later that same day, the trial court denied James's motion. This appeal follows.

---

[1] The trial court's order denying James's motion reveals that James filed a prior motion to correct what he claimed was an erroneous sentence in 2008. That motion was denied by the trial court on March 24, 2008. (Order)

# Discussion and Decision

[6] James contends that the trial court erred in denying his motion to correct his allegedly erroneous sentence. Indiana Code section 35-38-1-15 provides an avenue by which a defendant may challenge what they believe to be an erroneous sentence:

> If the convicted person is erroneously sentenced, the mistake does not render the sentence void. The sentence shall be corrected after written notice is given to the convicted person. The convicted person and his counsel must be present when the corrected sentence is ordered. A motion to correct sentence must be in writing and supported by a memorandum of law specifically pointing out the defect in the original sentence.

"The purpose of the statute 'is to provide prompt, direct access to an uncomplicated legal process for correcting the occasional erroneous or illegal sentence.'" *Robinson v. State*, 805 N.E.2d 783, 785 (Ind. 2004) (quoting *Gaddie v. State*, 566 N.E.2d 535, 537 (Ind. 1991)).

[7] When reviewing the trial court's decision on a motion to correct an allegedly erroneous sentence, we "'defer to the trial court's factual finding' and review such decision 'only for abuse of discretion.'" *Brattain v. State*, 777 N.E.2d 774, 776 (Ind. Ct. App. 2002) (quoting *Mitchell v. State*, 726 N.E.2d 1228, 1243 (Ind. 2000)). "An abuse of discretion occurs when the trial court's decision is against the logic and effect of the facts and circumstances before it." *Id.* (citing *Myers v. State*, 718 N.E.2d 783, 789 (Ind. Ct. App. 1999)). "However, we will 'review a

trial court's legal conclusions under a de novo standard of review.'" *Id.* (quoting *Mitchell*, 726 N.E.2d at 1243).

[8]     In arguing that the trial court erred in denying his request to correct his allegedly erroneous sentence, James claims that the trial court erred at the time it initially sentenced him to death by allegedly holding his habitual offender status in abeyance.[2]   However, even if we were to assume for the sake of the instant appeal that the trial court had committed some form of error with regard to the habitual finding in imposing James's initial sentence, such error has already been eradicated as James's initial sentence was reversed by the Indiana Supreme Court and the matter remanded to the trial court for re-sentencing. *James I*, 613 N.E.2d at 19, 21.   Given the contention raised by James in the instant appeal, we also find it important to note that in *James I*, the Indiana Supreme Court not only reversed James's sentence, but also explicitly upheld the jury's determination that James was a habitual offender.   *Id*. at 26.

[9]     On remand, the trial court sentenced James to a term of sixty years.   The trial court enhanced James's sixty-year sentence by an additional thirty years by virtue of James's status as a habitual offender.   This sentence, for which James is currently incarcerated, was affirmed in its entirety by the Indiana Supreme Court.   *See James II*, 643 N.E.2d at 323-24.   As this is the sentence currently in

---

[2] We note that in levying this claim, James does not include any of the original sentencing documents in the record on appeal but rather relies only upon his own self-serving assertions.

effect, our review of the propriety of James's sentence must be limited to this sentence.

[10] James does not present any argument in the instant appeal relating to the propriety of the sentence imposed by the trial court on remand. James's motion is based entirely on a claim relating to his initial sentence, which, again, was overturned by the Indiana Supreme Court in *James I*. Given that this sentence has been overturned and is no longer in effect, we conclude that any error that may have existed in that initial sentence is no longer of any consequence. We therefore conclude that the trial court did not err in denying James's motion.[3]

---

[3] Furthermore, we observe that the record falls far short of demonstrating any error by the trial court with regard to James's habitual offender status at the time the trial court imposed James's original sentence. In *Canaan v. State*, 541 N.E.2d 894, 902 (Ind. 1989), the Indiana Supreme Court considered whether it violated the prohibitions against double jeopardy for the State to seek both the death penalty and a habitual offender enhancement. In finding no violation of the prohibitions against double jeopardy, the Indiana Supreme Court stated the following:

> Double jeopardy rights protect a defendant from multiple *punishments*. The death penalty and habitual offender determination are *enhancements*, and do not, therefore, constitute cumulative punishment. Enhancement for habitual criminal is based on facts different from those supporting imposition of the death penalty. In addition, practically speaking, there is no way Canaan could be sentenced as an habitual offender (to a term of years) and be given the death penalty. Indeed, although he was found to be an habitual offender, he was not sentenced on that. The situation was not, as Canaan argues, that the State could not decide which penalty was most appropriate; rather, the State was of the opinion that if the death penalty were reversed on appeal or not found appropriate by the jury, he would receive an enhanced sentence for having committed this heinous crime after having been convicted several previous times for felonies. There is no error presented here.

*Id*. (emphases in original).

The practice implicitly approved by the Indiana Supreme Court in *Canaan* is the practice followed by the State in the instant matter. According to the assertions made by James, the State sought the habitual offender enhancement as an alternative to the death penalty

The judgment of the trial court is affirmed.

Bailey, J., and Altice, J., concur.

---

enhancement. The jury found James to be a habitual offender and, in sentencing James to death, the trial court noted that the habitual offender finding was valid and the corresponding sentence enhancement would be applicable at sentencing if James's sentence of death were ever overturned and the matter remanded for re-sentencing. That is precisely what happened here.